UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| MAURICE McGEE, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-894 (CFD) |
| | : | |
| NEW BREED LOGISTICS, INC., | : | |
| Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Maurice McGee, brought this action alleging employment discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-58 and 46a-60, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. McGee also alleges defamation under Connecticut common law. The defendant, New Breed Logistics, Inc. ("New Breed"), has filed a motion for summary judgment as to all claims. For the following reasons, New Breed's motion for summary judgment is granted.

**I.    Factual Background**[1]

Maurice McGee has had diabetes for over six years. McGee controls his diabetes with diet, exercise, and medication and claims that it does not affect his ability to work.

McGee worked as a temporary employee for New Breed[2] from January 2007 through October 2007. At New Breed, McGee worked the third shift, 9:00 p.m. to 5:30 a.m., performing

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties, including depositions. They are undisputed unless otherwise indicated.

[2] New Breed is involved in inventory and distribution management for manufacturers. See New Breed Logistics, http://www.newbreed.com/ (last visited Jul. 7, 2011).

inventory control duties, such as counting machine parts in bins. McGee typically worked the third shift with another co-worker but McGee's supervisor, Frank Zappone, worked the first shift and was not present during McGee's shift.

During his employment at New Breed, Zappone, McGee's co-workers, and another supervisor were aware that McGee had diabetes. Despite having diabetes, McGee was able to perform his duties at New Breed. McGee did not require any special accommodations due to his diabetes.

Between May 2007 and August 2007, Constance Cahill, a Human Resources employee at New Breed, offered McGee a permanent position on the second shift. McGee, however, did not accept this position because he could not work a second shift schedule and he liked his co-workers and duties on the third shift

In September 2007, Zappone told McGee that he was going to be offered a full-time position on the third shift and should be expecting some paperwork related to the position. Cahill subsequently offered McGee the third shift position on September 20, 2007. In connection with the offer, McGee received a letter from Cahill, an information request from the Concentra medical facility,[3] and an application.

Beginning on September 25, 2007, McGee was absent from work with an illness. McGee had previously complained to a co-worker on the third shift about abdominal pains and wrote a letter to Zappone, stating that he may be developing a medical condition and was "on [a] strict medical watch." McGee brought a physician's note to New Breed on September 25, 2007, which stated that he could return to work on October 1, 2007.

---

[3] Concentra performed pre-employment physical examinations for New Breed.

While absent from work due to his illness, McGee contacted Cahill and informed her that he was accepting the full-time offer. On September 26, 2007, McGee went to the Concentra medical facility to complete the required pre-employment medical exam. At the time of the exam, McGee believed he was able to satisfactorily perform his job functions and signed a form stating that he did not have any medical conditions that would interfere with his ability to work. The physician at Concentra concluded that McGee had no medical restrictions.

On October 1, 2007, McGee returned to work at New Breed. On October 2, however, McGee arrived at New Breed with another doctor's note. The note, which was dated October 2, 2007, referenced "abdominal pain," requested light duty work only for McGee, and stated that McGee could not work alone. A supervisor told McGee that he had been instructed to contact Cahill before allowing McGee to return to work. When the supervisor could not reach Cahill, he told McGee that he was not permitted to report to work and McGee went home.

The restrictions in the October 2 note were apparently intended to help McGee adjust to new medication and the "light duty" restriction was intended to help McGee with lifting heavy bins. Such assistance for McGee was not unusual though; McGee had received help with heavier bins since his assignment in January 2007. However, because Cahill believed that the October 2 note conflicted with McGee's Concentra report, Cahill contacted Concentra. The Concentra physician who had examined McGee informed Cahill that McGee never told him of any serious medical condition that would affect his job responsibilities.

Based on a conversation with McGee's supervisor, Cahill believed that McGee's restrictions in the October 2 note rendered him unable to perform his job responsibilities on the third shift. Specifically, Cahill believed that third-shift workers worked alone and, thus, could

not be assisted by other employees. Because McGee could not work alone in accordance with his October 2 physician's note, Cahill determined that McGee could not return to work at that time.

After McGee spoke with Cahill on October 3, McGee asked his physician to fax Cahill another note. That October 3 note stated that McGee was "able to return to work/school on 10-3-07." Cahill, however, did not allow McGee return to work because the October 3 note did not also address the restrictions contained in the October 2 note. Cahill requested an additional physician's note that clarified the situation, but McGee never provided such a note. Cahill also told McGee that if he was out of work for more than two weeks, he could not return to work. The October 3, 2007, telephone call between McGee and Cahill was the last communication McGee had with anyone at New Breed, and he did not return to work at any time.

McGee subsequently filed a charge against New Breed with the Equal Employment Opportunity Commission ("EEOC") on January 16, 2008, alleging that New Breed discriminated against him on the basis of his disability. The EEOC dismissed McGee's complaint on March 12, 2009, and McGee obtained a release of jurisdiction from the Connecticut Commission on Human Rights and Opportunities. He then filed this action.

## II.     Discussion

### A.     Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d

Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the non-moving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

B. Count One: CFEPA, § 46a-60

The CFEPA prohibits employers from refusing "to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . physical disability." Conn. Gen. Stat. § 46a-60(a)(1). To establish a prima facie case of disability discrimination under the CFEPA, a plaintiff must prove that "(1) he [was] in the

-5-

protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Jackson v. Water Pollution Control Auth., 900 A.2d 498, 508 (Conn. 2006).

McGee does not claim that he was disabled. Rather, McGee claims that New Breed perceived him as disabled due to his diabetes and rescinded its job offer to him because of that perception. The U.S. Court of Appeals for the Second Circuit has held that there is no cause of action for perceived disability discrimination under the CFEPA. See Beason v. United Tech. Corp., 337 F.3d 271, 279–82 (2d Cir. 2003). Following Beason, several opinions have questioned the Second Circuit's holding in Beason and have inferred a cause of action for a perceived disability under the CFEPA. See, e.g., Young v. Precision Metal Products, 599 F. Supp. 2d. 216, 228 n.1 (D. Conn. 2009); Graham v. Boehringer Ingelheim Pharmaceuticals, No. CV040488908S, 2007 WL 3317528, at *9–11 (Conn. Super. Ct. Oct. 19, 2007); Mills v. Re/Max Heritage, No. CV030193581, 2005 WL 941400, at *1 n.2 (Conn. Super. Ct. Mar. 16, 2005). Nonetheless, the Second Circuit's decision in Beason has not been overturned and many decisions have followed it. See, e.g., Brown v. Waterbury Bd. of Educ., 722 F. Supp. 2d 218, 228 (D. Conn. 2010) (relying on Beason and agreeing that there is no cause of action under Connecticut law for perceived physical disability discrimination); Tomick v. UPS, Inc., 511 F. Supp. 2d 235, 240–41 (D. Conn. 2007) (holding that there is no cause of action for perceived disability discrimination under the CFEPA); Howell v. New Haven Bd. of Educ., 309 F. Supp. 2d 286, 289–90 (D. Conn. 2004) ("[I]t has become clear that the facts set forth by [the plaintiff] in support of his claim are legally irrelevant, as the Second Circuit has ruled that CFEPA does

not recognize claims for perceived disability."); Grunberg v. Quest Diagnostics, Inc., No. 3:05-cv-1201, 2008 WL 323940, at *5 n.4 (D. Conn. Feb. 5, 2008) ("The Second Circuit has held there is no "regarded as" disability discrimination under CFEPA."); Bailey v. United Techs. Corp., 2005 WL 2338890, at *1 (D. Conn. Sept. 22, 2005) ("Plaintiff's claims for perceived disability discrimination pursuant to CFEPA section 46a-60 must be dismissed because Connecticut law does not provide a cause of action for perceived disability discrimination." (internal quotations omitted)); Desrosiers v. Diageo North Am., Inc., No. CV064015692S, 2010 WL 3964634, at *9 (Conn. Super. Ct. Sept. 9, 2010) (stating that the court found "the Beason decision to be well reasoned and agrees with the holding that a cause of action based on a perceived disability is not a legally recognized action in Connecticut").

The Connecticut lower courts that have rejected Beason have relied on earlier Connecticut Superior Court decisions, including CHRO, ex. rel. Tucker v. General Dynamics Corp., No. 517054, 1991 WL 258041 (Conn. Super. Ct. Nov. 22, 1991). In Tucker, the court stated that

> [i]t would be both ironic and insidious if the legislative intent in providing the protection of the Fair Employment Act were afforded to persons who actually have a handicap that makes "achievement unusually difficult" or limits their capacity to work, but the same protection is denied to those whom employers perceive as being handicapped.

Id. at *5. However, the Second Circuit expressly rejected Tucker's holding when it declined to recognize a perceived disability cause of action under the CFEPA in Beason. See Beason, 337 F.3d at 281. Since Beason was decided, the CFEPA has not been amended and no Connecticut appellate court has addressed the issue of whether there is a perceived disability cause of action

under the CFEPA.[4] See Tomick, 511 F. Supp. 2d at 241 ("The Connecticut Supreme Court has not expanded the legislatively created rights codified in General Statutes § 46a-60(a)(1) . . . . . Moreover, the Connecticut General Assembly has not chosen to expand those rights that act although its limitation has been pointed out by the supreme court [in Ann Howard's Apricots Restaurant, Inc. v. CHRO, 676 A.2d 844 (Conn. 1996).").

Consequently, despite the disagreement over Beason within the Connecticut Superior Court and the District of Connecticut, absent any Connecticut appellate authority to the contrary or any amendment to the CFEPA by the legislature, this Court finds that Beason is the controlling standard. Accordingly, there is no cause of action under the CFEPA for perceived disability discrimination, and, therefore, New Breed's motion for summary judgment as to Count One is granted.

### C. Count Two: Americans with Disabilities Act[5]

In Count Two, McGee claims that New Breed regarded him as disabled and discriminated against him in violation of the ADA based on its perception of his disability.

---

[4] McGee argues that the Connecticut Supreme Court's decision in Curry v. Allan S. Goodman, Inc., 944 A.2d 925 (Conn. 2008), undermines the Second Circuit's rationale in Beason. In Curry, the Connecticut Supreme Court construed the CFEPA to include a reasonable accommodation requirement, despite the statute not explicitly providing one. Id. at 933–40. A reasonable accommodation requirement, however, is a distinct issue from perceived disability discrimination, and there is no indication that Curry would affect the Second Circuit's holding in Beason.

[5] The ADA Amendments Act of 2008 expressly overruled several of the cases that this Court has relied on for purposes of analyzing Count Two, including Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999). The Act became effective as of January 1, 2009, however, and does not apply retroactively. Because the disputed activity in this case occurred in September and October 2007, prior to the effective date of the Act, the Act is not applicable to the Court's resolution of this case. See Moran v. Premier Educ. Group, LP, 599 F. Supp. 2d 263, 271–72 (D. Conn. 2009).

The ADA prohibits discrimination in the workplace "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Claims of discrimination under the ADA are analyzed under the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009).

To establish a prima facie case of discrimination under the ADA, the plaintiff must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). McGee does not argue that he was actually disabled under the ADA; rather, McGee claims that New Breed regarded him as disabled, such that he satisfies the ADA's statutory definition of having a "disability" under 42 U.S.C. § 12102(2)(C).

Under the ADA, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "To satisfy this statutory definition a plaintiff must show [that]: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Rieger v. Orlor, Inc., 427 F.

Supp. 2d 105, 119 (D. Conn. 2006) (citing Giordano, 274 F.3d at 748); see Curcio v. Bridgeport Bd. of Educ., 477 F. Supp. 2d 515, 520 (D. Conn. 2007) ("A plaintiff is disabled under the ADA if her employer wrongly believes she is disabled—that is, if the employer believes her impairments substantially limit her ability to work when in fact they do not."). "Thus, [a] plaintiff's 'regarded as' claim turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." Rieger, 427 F. Supp. 2d at 119 (quoting Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998)).[6]

In order to satisfy the ADA statutory definition of "being regarded as having a disability", McGee must show that New Breed regarded him as substantially limited in a major life activity due to his disability. The statutory language "substantially limits" is crucial in assessing whether a particular impairment constitutes a disability for ADA purposes: although many individuals suffer an impairment that affects major life activities, only a subset of those individuals are substantially limited by the impairment. See Ryan v. Grae & Rybicki, P. C., 135 F.3d 867, 870 (2d Cir.1998).

Although McGee does not specify which major life activity he believes that New Breed perceived him as being substantially limited in, it appears that McGee is alleging that New Breed perceived him as substantially limited in working, which is a major life activity for purposes of the ADA. See Cameron v. Cmty. Aid for Retarded Children, 335 F.3d 60, 64–65 (2d Cir. 2003);

---

[6] New Breed also argues that McGee does not have an impairment because his diabetes were controllable by medication. See Sutton, 527 U.S. at 482–83 (stating that a person with diabetes is not disabled per se under the ADA because its effects can be mitigated by corrective medication). McGee's ADA claim, however, is based on his belief that New Breed regarded him as disabled, and to be regarded as disabled, McGee does not actually have to be disabled. See Rieger, 427 F. Supp. 2d at 119.

Bartlett v. N.Y. State Bd. of Law Exam'rs, 226 F.3d 69, 82 (2d Cir. 2000); see also 29 C.F.R. § 1630.2(I). For a plaintiff's impairment to substantially limit the major life activity of working, so as to trigger the ADA's protection, the impairment must significantly restrict the plaintiff's "ability to perform either a class of jobs or a broad range of jobs in various classes . . . . The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Giordano, 274 F.3d at 747–48 (discussing and quoting EEOC regulation 29 C.F.R. § 1630.2(j)(3)); see Sutton, 527 U.S. at 492 ("To be substantially limited in the major activity of working, [] one must be precluded from more than one type of job, a specialized job, or a particular job of choice.").

First, the undisputed evidence shows that New Breed did not regard McGee as substantially limited in his work at New Breed due to his diabetes. In fact, the record shows that New Breed was aware of McGee's diabetes while he was a temporary worker at New Breed and, knowing of this condition, New Breed still offered McGee two permanent positions because of his positive performance in inventory control. Thus, it does not follow that New Breed regarded McGee's disability as substantially limiting his ability to work. See Rieger, 427 F. Supp. 2d at 119 ("[T]he record contains no evidence that defendants perceived plaintiff's insomnia as substantially limiting her from working, particularly since they offered her other positions after she informed them about her insomnia.").

McGee claims that Cahill's interpretation of his October 2 physician's note creates a genuine dispute of material fact as to whether she regarded him as disabled;[7] however, according

---

[7] McGee asserts that because Cahill's perception of his disability is a question of intent or motive, summary judgment is not appropriate. See Hill v. Pfizer, Inc., 266 F. Supp. 2d 352, 361 (D. Conn. 2003) (noting, in an ADA perceived disability discrimination case, that "the Second

to Cahill's affidavit, Cahill interpreted the October 2 note to mean "that Mr. McGee could not operate the machinery used on the third shift, because it was [her] understanding that only one individual could operate the machinery."[8] Thus, even though Cahill interpreted McGee's note as limiting him from performing the duties of his current position on the third shift, Cahill's interpretation of the note does not satisfy the standard that the employer must perceive the plaintiff to be substantially limited in a *broad range* of jobs. Furthermore, an employer's perception that an employee is limited to "light duty," like McGee was limited to in the October 2 note, does not support a conclusion that the employee was regarded as disabled. See Colwell, 158 F.3d at 647; Brown, 772 F. Supp. 2d at 226 (noting that, as a matter of law, restrictions on a person's lifting capacity are not sufficient to show a substantial limitation on the person's ability to work). Also, transitory or minor impairments with an actual or expected duration of six months or less do not qualify as disabilities under the ADA. See 42 U.S.C. § 12102(3)(B). Because there is no evidence that Cahill interpreted McGee's abdominal condition to be a long-term ailment, and McGee does not claim otherwise, the Court finds that McGee's disability does not constitute a disability under the ADA. Finally, there is no indication that Cahill's reaction to the October 2 doctor's note was related to McGee's diabetes.

---

Circuit has repeatedly cautioned that where intent is an issue, the courts should be particularly wary about granting summary judgment"). Nonetheless, this Court has granted summary judgment on a perceived disability claim several times. See, e.g., Rieger, 427 F. Supp. 2d at 119–20; Brown, 722 F. Supp. 2d at 227.

[8] Cahill apparently believed that the machines used on the third shift were fork lifts, instead of "cherry pickers." This distinction, however, is not material to the resolution of this case.

"The Second Circuit has stated that satisfying the ADA's statutory definition of a disability constitutes a 'significant threshold for seeking redress under the ADA.'" Brown, 722 F. Supp. 2d at 227 (quoting Felix v. New York City Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003)). McGee has not presented sufficient evidence that Cahill, or anyone at New Breed, regarded him as disabled in a way that substantially limited his ability to work or substantially limits any other major life activity. Accordingly, New Breed's motion for summary judgment as to McGee's ADA claim is granted.

### D. Count Three: CFEPA, § 46a-58[9]

In Count Three, McGee claims that New Breed's conduct violated Conn. Gen. Stat. § 46a-58(a); however, the courts have held that there is no private right of action under Conn. Gen. Stat. § 46a-58. See Alungbe v. Bd. of Trustees, 283 F. Supp. 2d 674, 687 (D. Conn. 2003) ("The courts have held that [§ 46a-58] provides no private right of action."). McGee does not oppose New Breed's motion for summary judgment as to this count. Accordingly, New Breed's motion for summary judgment as to Count Three is granted.

### E. Count Four: Defamation

In Count Four, McGee claims that New Breed made a defamatory statement about him to John Lavorgna, an agent at Monroe Staffing, which was the staffing agency that originally placed McGee at New Breed.

---

[9] Conn. Gen. Stat. § 46a-58 prohibits certain discriminatory conduct, but requires an administrative proceeding and appeal to the Connecticut Superior Court. See Town of W. Hartford v. Operation Rescue, 726 F. Supp. 371, 380 (D. Conn. 1989), vacated on other grounds, 915 F.2d 92 (2d Cir. 1990).

The evidence shows both that the alleged defamatory statement was not published to a third party and that New Breed had a qualified privilege to make the alleged statement as part of an employment reference. See Belanger v. Swift Transp., Inc., 552 F. Supp. 2d 297, 301 (D. Conn. 2008) (listing the prima facie elements of defamation under Connecticut law, which includes the requirement that the statement be published); Miron v. Univ.of New Haven Police Dep't, 931 A.2d 847, 853 (Conn. 2007) (noting the qualified privilege for employment references). McGee also does not oppose New Breed's motion for summary judgment as to Count Four. Accordingly, New Breed's motion for summary judgment as to Count Four is granted.

### III. Conclusion

Accordingly, the defendant's motion for summary judgment [Dkt #20] is GRANTED. The Clerk is ordered to close this case.

SO ORDERED this 14th day of July 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**